1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

YOLANDA DOBKINS,                        No. C 08-05447 CW (PR)
10
                    Petitioner,
11
          v.                            ORDER DENYING PETITION FOR WRIT
12                                       OF HABEAS CORPUS; DENYING
STUART FORREST, Chief Probation         CERTIFICATE OF APPEALABILITY
13   Officer of San Mateo County,

14                  Respondent.

15   _____/

16

17                              INTRODUCTION

18        Petitioner Yolanda Dobkins, a probationer, seeks a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner filed her

20   Petition on December 3, 2008.  On June 24, 2009, the Court issued an

21   Order to Show Cause why the writ should not be granted and on

22   October 29, 2009, Respondent filed an Answer.  Petitioner filed a

23   Traverse on December 30, 2009.

24        For the following reasons, and having considered all of the

25   papers filed by the parties, the Court DENIES the Petition.

26                           PROCEDURAL HISTORY

27        On November 15, 2005, a jury in San Mateo County Superior Court

28   found Petitioner guilty of two counts of insurance fraud and two

**United States District Court**
For the Northern District of California

counts of attempted perjury.  Petitioner was acquitted on five other counts.  The trial court suspended imposition of her sentence and granted Petitioner five years supervised probation.

Petitioner appealed and on June 20, 2007, the California Court of Appeal found insufficient evidence of one of the perjury counts, but otherwise affirmed the judgment in an unpublished decision. People v. Dobkins, No. A113068, Court of Appeal of the State of California, First Appellate District, June 20, 2007 (filed by Respondent as Ex. F and, hereinafter, Opinion).  The California Supreme Court denied Petitioner's petition for review.

STATEMENT OF FACTS

The California Court of Appeal summarized the factual background of this case as follows.  Petitioner worked as a bill collector for the Revenues Services Department of San Mateo County. Opinion at 2.  In September 2000, Petitioner requested leave from work due to surgery on her hand.  She applied for and received state disability payments from October 2, 2000 through September 30, 2001. Opinion at 3.  On her application, she stated that her injury was not work-related; the state disability program is designed for eligible people who are incapable of working due to non-work-related disabilities.  Opinion at 3.  When asked in November 2000 by a manager in her office whether her injury was work-related and whether she needed worker's compensation forms, Petitioner allegedly responded that the injury was not work-related.  Opinion at 3.

In February 2001, however, Petitioner requested worker's compensation forms from her supervisor, Jorge Gutierrez.  Petitioner

then met with the worker's compensation coordinator for San Mateo County, Ruthanne Morentz.  Opinion at 3.  Petitioner told Morentz she had been diagnosed with reflex sympathetic dystrophy (RSD), and that she was having severe pains following her carpal tunnel surgery.  Opinion at 3.  Morentz told Petitioner her claim required investigation since she had already had surgery, had a prior history of problems, and was reporting an older claim.  Petitioner claimed she was unable to use her right arm.  Opinion at 3.

A worker in Morentz's office reported to Morentz that she saw Petitioner use both her right and left hands to pry open the elevator doors.  Opinion at 4.  Petitioner's worker's compensation claim was conditionally denied; Petitioner obtained a lawyer and continued to pursue her claim.

Petitioner continued to see numerous doctors, reporting to them that she had pain and swelling in her right hand and arm, and difficulty using her right arm, among other problems.  She was diagnosed with RSD, among other conditions.  An MRI revealed no significant damage.  Opinion at 5-6.

In May 2001, based on several factors, Morentz placed Petitioner under surveillance.  The surveillance took place from May 2001 until February 2002.  Opinion at 4-5.  Five videotapes of Petitioner were taken, and played in court.  The tapes showed Petitioner driving a car, using both her right and left hands to, among other things, pump gas, open and close her car doors, and wash her car.  Opinion at 6-7.  The tapes also showed Petitioner carrying items in her right hand, and, on December 17, 2001, attempting to

3

remove a barbecue inside a big box from the trunk of her car.  "She exhibited no apparent pain or disability."  Opinion at 7.  After viewing the tapes, two of her treating doctors stated Petitioner's statements to them about her pain were inconsistent with the activity level shown on the videotapes.  Opinion at 8.

Morentz also hired Philip Klein, a worker's compensation defense attorney.  Opinion at 7.  During her deposition by Klein, Petitioner stated that she did not wash her car, and that a neighbor had helped her lift the barbecue.  She also stated she only used her left hand to drive.  Opinion at 7-8.

Petitioner was arrested on September 17, 2003.  Before she left her house, she rummaged through drawers for a wrist brace, and placed it on her right hand.  Opinion at 2.

Testifying for Petitioner's defense at trial was Dr. Richard Gravina, a neurologist and psychiatrist, who reviewed Petitioner's records and examined her.  He stated that Petitioner suffered from bilateral carpal tunnel syndrome, post-operative right RSD, repetitive stress injury, and tendonitis.  Opinion at 8.  He testified that these injuries resulted from cumulative trauma sustained at Petitioner's workplace.  Opinion at 8.  Gravina also opined that the activities on the videotapes were not inconsistent with her disability, and concluded that Petitioner was temporarily disabled and could not work.  Opinion at 9.  Dr. Robert Wayne Allen also testified on Petitioner's behalf, diagnosing Petitioner with chronic pain, carpal tunnel, and repetitive stress injury.  Opinion at 9.  He also found the videotapes not inconsistent with his

4

diagnosis.

The jury found Petitioner guilty of two counts of attempted perjury, based on her deposition statements regarding washing her car and not removing the barbecue from the trunk.  Opinion at 9-10. Petitioner was also found guilty of two other counts, relating to her false statements to doctors.  Opinion at 9-10.  Her motion for a new trial was denied.  Opinion at 10.

                              LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment . . . . ."  White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004).  Under AEDPA, this Court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Under this deferential standard, federal habeas relief will not be granted "simply because [this]

5

[C]ourt concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) rests in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

The state court decision to which 28 U.S.C. § 2254 applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-1092 (9th Cir. 2005). Although Ylst primarily involved the issue of procedural default, the "look through" rule announced there has been extended beyond that particular context. Barker, 423 F.3d at 1092 n.3 (citing Lambert v. Blodgett, 393 F.3d 943, 970 n.17 (9th Cir. 2004) and Bailey v. Rae, 339 F.3d 1107, 1112-1113 (9th Cir. 2003)).

Even if a petitioner meets the requirements of § 2254(d), habeas relief is warranted only if the constitutional error at issue had a substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). Under this standard, petitioners "may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief

6

based on trial error unless they can establish that it resulted in
'actual prejudice.'" Brecht, 507 U.S. at 637, citing United States
v. Lane, 474 U.S. 438, 439 (1986).

DISCUSSION

Petitioner raises two claims in her Petition.  Both claims are
discussed below.

I.   Evidence of Attempted Perjury

Petitioner maintains that there was insufficient evidence to
support her conviction for attempted perjury.  Petitioner was
originally convicted of two counts of attempted perjury; one count
was overturned by the California Court of Appeal.  The state court
addressed this issue in a reasoned opinion on direct appeal.

The Due Process Clause "protects the accused against conviction
except upon proof beyond a reasonable doubt of every fact necessary
to constitute the crime with which he is charged." In re Winship,
397 U.S. 358, 364 (1970).  A state prisoner who alleges that the
evidence in support of his state conviction cannot be fairly
characterized as sufficient to have led a rational trier of fact to
find guilt beyond a reasonable doubt therefore states a
constitutional claim, see Jackson v. Virginia, 443 U.S. 307, 321
(1979), which, if proven, entitles him to federal habeas relief, see
id. at 324; see also Wigglesworth v. Oregon, 49 F.3d 578, 582 (9th
Cir. 1995).

A federal court reviewing collaterally a state court conviction
does not determine whether it is satisfied that the evidence
established guilt beyond a reasonable doubt.  Payne v. Borg, 982

F.2d 335, 338 (9th Cir. 1992), <u>cert. denied</u>, 510 U.S. 843 (1993). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>See</u> <u>id.</u> (quoting <u>Jackson</u>, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. <u>See</u> <u>Jackson</u>, 443 U.S. at 324; <u>Payne</u>, 982 F.2d at 338.

On habeas review, a federal court reviewing an insufficiency of the evidence claim must consider all of the evidence admitted at trial. <u>McDaniel v. Brown</u>, 130 S. Ct. 665, 672 (2010) (per curiam); <u>see</u> <u>id.</u> (finding no <u>Jackson</u> claim where argument that evidence was insufficient to convict required finding that some of the evidence should have been excluded); <u>see also</u> <u>LaMere v. Slaughter</u>, 458 F.3d 878, 882 (9th Cir. 2006) (in a case where both sides have presented evidence, a habeas court need not confine its analysis to evidence presented by the state in its case-in-chief). If confronted by a record that supports conflicting inferences, a federal habeas court "must presume--even if it does not affirmatively appear on the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson</u>, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. <u>Bruce v. Terhune</u>, 376 F.3d 950, 957 (9th Cir. 2004); <u>see also</u> <u>People of the Territory of Guam v. McGravey</u>, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated

testimony of victim).

Here, the attempted perjury charges and convictions[1] were based on Petitioner's deposition.  Petitioner was convicted of two counts of perjury: one based on her statement relating to removing the barbecue from the car trunk and one relating to washing her car. The Court of Appeal found there was insufficient evidence to support the conviction relating to the barbecue statement, but upheld the conviction relating to the carwashing statement.  Opinion at 10-19.

The Court of Appeal recognized that, under California law, a perjury conviction requires evidence to establish beyond a reasonable doubt both falsity and materiality of the statement in question.  Opinion at 10-11.  After reviewing the charge and evidence presented, the court addressed both falsity and materiality.

1.   The Deposition Testimony and the Prosecutor's Argument

Defendant's conviction of attempted perjury on count 7 was based on the following questions and answers at defendant's deposition on February 21, 2002:

"Q: Do you presently wash your cars?
A: No.  I have my cars washed.
Q: When [was] the last time you washed either the Towncar or the Corvette?
A: Probably – I don't know.  It has been way over a year."

In her closing argument, the prosecutor argued to the jury that she had alleged "the specific testimony is [that it had been] more than one year since [defendant] washed the cars.  That was February 21st, 2002.  We know on the videotape she's washing cars not only October 6th, but also July 3rd as well."  The prosecutor then set forth the

---

    [1] Petitioner was charged with attempted perjury because she never signed the transcript of her deposition.  See People v. Post, 94 Cal. App. 4th 467, 480-484 (2001).

9

foregoing exchange in the deposition.

2.    The Element of Falsity

Defendant contends that her response to when was the last time she washed her car was too ambiguous and unresponsive to establish perjury.  She asserts that Klein failed to follow-up with a question that pinned her down as to when she last washed her car.  She cites <u>Bronston v. U.S.</u> (1973) 409 U.S. 352, which holds that "the perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner – so long as the witness speaks the literal truth.  The burden is on the questioner to pin the witness down to the specific object to the questioner's inquiry." (<u>Id.</u> at p. 360.)  "[A]ny special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a . . . perjury prosecution." (<u>Id.</u> at p. 362).

The falsity element of the crime of perjury requires that a statement be literally false.  Misleading and nonresponsive testimony that is literally true cannot support a perjury conviction.  (<u>In re Rosoto</u> (1974) 10 Cal. 3d 939, 950; <u>Cabe v. Superior Court</u> (1998) 63 Cal. App. 4th 732, 740.)

The People contend that defendant's answer was not ambiguous, because defendant clearly stated that it had been "way over a year" since she washed her car.  The People maintain that this answer was literally false.

There are several problems with the question posed by Klein.  Not only did Klein fail to pin defendant down regarding her initial response of "probably," but he also failed to clarify in a follow-up question that he was referring to defendant's personally washing the car and not to defendant's taking her car to a carwash or having others wash her car.

The question for us in review, however, is whether a rational jury could possibly have found the falsity element of the crime of perjury satisfied.  In the present case, we conclude the jury could have found defendant's response that it had been "way over a year" since she last washed her cars was false given the videotapes showing her personally washing the car on two separate occasions. Although defendant initially stated, "Probably – I don't know," that portion of her answer was non-responsive to the question.  Her subsequent response did answer the question and therefore the jury could have concluded that

10

defendant intentionally provided a false statement when
stating that it had been "way over a year" since she
washed the car.

D.    The Materiality Element

  Defendant contends that her statement regarding washing
her car was not material.  She claims that her ability to
wash her car was immaterial because, as her experts
testified, people with carpal tunnel syndrome and RSD can
have good and bad days, and she could have washed her cars
on good days or when her pain medication masked the pain.
Her subjective complaints of pain to her doctors were,
therefore, according to defendant, not inconsistent with
her ability to use her right hand to wash her cars on her
"good" days.

  When considering whether a statement is material,
California law focuses on whether the false statement, at
the time it was made, had the tendency to probably
influence the outcome of the proceedings.  (See, e.g.,
People v. Poe (1968) 265 Cal. App. 2d 385, 391.)
Defendant cites the testimony of her expert doctors that
defendant's ability to wash the car had no bearing on the
diagnosis of carpal tunnel or RSD and their testimony that
the objective tests established her injury.

  The question, however, is whether a jury could
reasonably have found that, had defendant told Doctors
Key, Johnson, and Nakamura that she was able to use her
right hand to wash her cars, it would have probably
affected these doctors' assessments of whether she could
work.  The videotape showed defendant washing her car in
July and October 2001.  Specifically, on October 6, 2001,
Dr. Key, as well as others, testified that the videotape
showed defendant washing both of her cars for a period of
about one hour and 34 minutes.  Defendant used a rag or
sponge after hosing the car and then dried the car.  Two
days later, on October 8, defendant saw Dr. Key and told
her that both her arms were extremely tender and painful.
She stated that she had pain all of the time, was having
difficulty doing things with her right hand, and did not
seem to be getting any better.  She did not mention the
car washing two days earlier.

  Dr. Key testified that defendant's action of washing her
cars was "actually more than" Dr. Key would have expected
that she could do, given defendant's statements to her
during her office visits.  Dr. Key testified that this
activity did not bear on her diagnosis of bilateral carpal
tunnel or RSD or her determination that defendant could
not return unrestricted to work.  She did, however,

11

1

2

3

> testify that the fact that defendant could wash her cars
> showed that she "was capable of some repetitive activity"
> and that she might have been able <u>to return to work with
> restrictions</u>, such as limitations on typing to about four
> hours a day.

4

5

6

7

8

9

10

11

12

13

> Dr. Johnson testified that, after viewing the
> videotapes, he believed that defendant had misrepresented
> herself to him during her office visits, although he could
> not say whether she deliberately misrepresented herself to
> him.  He stated that, after seeing the videotape, he
> "would have strong feelings that probably she could return
> to work."  His diagnosis and treatment, however, would
> have remained the same.  Dr. Johnson conceded that
> defendant's complaints of pain when visiting him, despite
> being able to wash her car, would not represent a
> misrepresentation under the theory of a good and bad day.
> He further elaborated that the videotapes only showed good
> days, and defendant did not appear to have any bad days
> while being taped.  He opined that the "theory" of a good
> day and a bad day as explaining defendant's activities on
> the videotapes while complaining of pain each time she saw
> him was "probably" a "theory" [that was] not going to bear
> out[.]"

14

15

16

17

18

> Dr. Nakamura stated that, based on defendant's
> complaints and description of her symptoms during the time
> he saw her from January to October 2001, he believed she
> was completely disabled, unable to work, and probably
> unable to do many everyday activities.  He did not see the
> videotapes, but he testified that he would not have
> expected to see her wash her cars using her right and left
> hands.  Of his 50 to 100 RSD patients, he never saw any of
> them hand washing cars themselves.

19

20

> Accordingly, based on the testimony of the three doctors
> who treated defendant, we conclude sufficient evidence
> supported the jury's finding of materiality.

Opinion at 16-19.

21

22

23

24

25

26

     Petitioner cannot demonstrate that anything in the state

court's reasoned opinion denying this claim is contrary to, or an

unreasonable application of, clearly established United States

Supreme Court law.  Nor can she show that the opinion was based on

an unreasonable determination of the facts.

27

     Here, as on direct appeal, Petitioner relies mainly on <u>Bronston</u>

28

12

v. United States 409 U.S. 352 (1973) in support of her claim.  The
state court, however, addressed Bronston, and found, under the
applicable law defining perjury, that there was sufficient evidence
of falsity to support the jury's verdict.  Opinion at 17.  In
addition, the state court thoroughly addressed the issue of
materiality, considering the impact of the false statement on
various experts who testified at trial, and concluding that there
was sufficient evidence to support the jury's finding that the false
statement had the tendency to probably influence the outcome of the
proceedings.  Opinion at 18-19.

On a habeas claim of insufficient evidence, this Court's role
is not to determine whether it is satisfied that the evidence
established guilt beyond a reasonable doubt.  Payne, 982 F.2d at
338.  Rather, the federal court "determines only whether, 'after
viewing the evidence in the light most favorable to the prosecution,
any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt.'"  See id. (quoting Jackson,
443 U.S. at 319).  Here, Petitioner cannot demonstrate that the
state court's decision was unreasonable under the applicable federal
law, and therefore her claim must fail.

II.  Materiality Instruction

Petitioner's second claim alleges that the Court of Appeal's
finding that a certain instruction was in error, but that the error
was harmless, violated her right to due process.  This claim
involves the trial court's instruction on materiality, which the
Court of Appeal addressed in a reasoned opinion.

1    The instruction at issue stated that "'[a] false statement is

2 material if it could influence the outcome of the proceedings in

3 which it is uttered.  Whether it actually had that effect is

4 irrelevant.'"  Opinion at 19-20.  The state court found that the

5 instruction was erroneous, but that it was not prejudicial for the

6 following reasons:

7         Defendant cites the holding in <u>People v. Rubio</u> (2004)
         121 Cal. App. 4th 927, which concluded that the same
8         instruction on materiality used in the present case was
         overbroad.  (<u>Id.</u> at p. 929.)  The <u>Rubio</u> court explained:
9         "This instruction correctly informs the jury that a false
         statement must be material before the defendant can be
10        found guilty of perjury.  The instruction then defines a
         false material statement as one that 'could influence the
11        outcome of the proceedings in which it is uttered.'  We
         think the correct definition of a false material statement
12        is one that 'could probably have influenced the outcome'
         of the proceeding in which it is uttered.'  (<u>Ibid.</u>)  The
13        court concluded that "[v]irtually any false statement
         could possibly influence the outcome of the proceeding."
14        (<u>Id.</u> at p. 933.)  The <u>Rubio</u> court, however, held that the
         instruction was harmless because defendant had essentially
15        conceded the fact of materiality in the lower court.  (<u>Id.</u>
         at p. 935.)
16
         We agree that the instruction given by the trial court
17       in the present case was deficient.  Most constitutional
         errors are subject to harmless error analysis because they
18       do not "<u>necessarily</u> render a criminal trial fundamentally
         unfair . . . ." (<u>Neder v. United States</u> (1999) 527 U.S. 1,
19       8-9.)  The California Supreme Court has held that
         instructional error affecting an element of the offense is
20       not a structural defect requiring automatic reversal of
         the conviction under either the California or United
21       States Constitution.  (<u>People v. Flood</u> (1998) 18 Cal. 4th
         470, 490, 503-504.)  Thus, this misstatement of the
22       materiality element is subject to harmless error review
         under <u>Chapman v. California</u> (1967) 386 U.S. 18 (<u>People v.</u>
23       <u>Rubio,</u> <u>supra</u>, 121 Cal. App. 4th at p. 935.)  We therefore
         affirm the judgment only if it appears "beyond a
24       reasonable doubt" that the incorrect instruction did not
         contribute to the verdict.  (<u>Chapman,</u> <u>supra,</u> 386 U.S. at
25       p. 24.)

26       Since we are reversing the perjury conviction for count
         9, we need only to consider whether the deficient
27

28                                      14

instruction was harmless beyond a reasonable doubt for
defendant's conviction on count 7.  Defendant maintains
that, unlike the situation in People v. Rubio where the
defendant essentially conceded the fact of materiality
(People v. Rubio, supra, 121 Cal. App. 4th at p. 935),
defendant in the present case vigorously contested the
materiality of the statements and the evidence of
materiality was "not overwhelming."

   Contrary to defendant's assertion that materiality was
vigorously argued in the present case, defense counsel did
not argue materiality in her closing argument.  Indeed,
appellate counsel for defendant fails to point to any
place in the record where trial counsel argued materiality
in the closing argument.  During closing argument, defense
counsel argued that both Dr. Gravina and Dr. Allen
testified that they were not impressed with the videotapes
because defendant's actions were medically ill-advised but
did not affect their diagnoses.  Defense counsel also
stressed the "good day and bad day" theory presented by
defendant's expert doctors.  With regard to the perjury
counts, defense counsel argued that defendant's statements
were not false.  Defense counsel defined perjury as "lying
under oath" and then proceeded to emphasize the reasons
she believed her client had not lied.  With regard to the
statement about washing the cars, defense counsel argued
that the issue was "semantics" and it depended upon what
part of the response the jurors were going to believe.
She explained that it depended upon whether the jurors
believed defendant's first sentence of "Oh, I probably — I
don't know," or the second sentence, "It's been way over a
year."

   Although defense counsel did not mention materiality,
the prosecutor explained that a fraudulent statement was
material if it was "important."  Subsequently, the
prosecutor again repeated that the element of material for
perjury means, "It had to be important.  It can't be the
sky is purple.  It can't be it was raining that day,
unless it's important to the investigation."  The People
maintain that the prosecutor's discussion of materiality
cured any problem with the deficient instruction.

   Defendant responds that simply admonishing the jury that
"material" means "important" is insufficient.  Rather, the
jury had to be told that the definition of material is
that the false statement "'could probably have influenced
the outcome of the proceedings. . . .'" (People v. Rubio,
supra, 1212 Cal. App. 4th at pp. 931-932.)

   We agree with defendant that the prosecutor's statements
did not adequately address the problems with the deficient

15

1    instruction.  However, we conclude that the instructional
2    error was harmless beyond a reasonable doubt.

3        Defendant argues that the doctors testified that
     patients with carpal tunnel syndrome and RSD can have good
     and bad days, which explained defendant's ability to wash
4    her cars on two occasions.  Dr. Johnson stated that had he
     seen defendant's activities on the videotape his diagnosis
5    and treatment would have remained the same.  Further, Dr.
     Gravina concluded that defendant was temporarily disabled
6    and could not have returned to work despite defendant's
     actions on the videotapes because of his conclusion
7    regarding the objective findings.  Finally, Dr. Wayne
     stated he did not believe defendant was misrepresenting
8    her pain level and patients experience fluctuating pain
     levels.
9
        The fact that defendant may have experienced good and
10   bad days does not negate the fact that the jurors could
     find defendant's failure to tell her doctors that she had
11   some good days was a material false representation.  The
     evidence was overwhelming that defendant presented herself
12   to Doctors Key, Johnson, and Nakamura as being in constant
     pain and unable to participate in everyday activities and
13   unable to work.  All of these doctors reported that
     defendant never stated that she could do activities such
14   as washing her cars.  All of the doctors treating
     defendant testified that the activities portrayed on the
15   videotape indicated that defendant had misrepresented her
     symptoms to them.  Although Doctors Key and Johnson did
16   not change their diagnosis that defendant suffered from
     carpal tunnel syndrome and RSD even after viewing the
17   videotapes, the doctors did conclude after viewing the
     tapes that defendant was probably able to work with
18   restrictions.  Viewing the videotapes caused Dr. Key to
     believe that defendant could work with restrictions, which
19   was especially significant since she was the doctor
     authorized to make the decision about defendant's ability
20   to work.

21       Given the lack of any argument regarding materiality by
     defense counsel during closing argument and the testimony
22   of Doctors Key and Johnson that the videotapes made them
     believe defendant probably could work with restrictions,
23   we conclude that the trial court's deficient instruction
     on materiality was harmless error under <u>Chapman v.</u>
24   <u>California</u>, <u>supra</u>, 386 U.S. at page 24.

25   Opinion at 20-23.

26       Petitioner cannot demonstrate that anything in the state

27

28                                  16

court's reasoned decision was contrary to, or involved an unreasonable application of, clearly established law as determined by the United States Supreme Court.  See 28 U.S.C. § 2254(d).  Nor can Petitioner demonstrate that the state court's decision relied on an unreasonable determination of the facts.

The United States Supreme Court has held that, when a state court finds a constitutional error harmless under Chapman, a federal court may not grant habeas relief unless the state court "applied harmless-error review in an objectively unreasonable manner." Mitchell v. Esparza, 540 U.S. 12, 18-19 (2003) (citations omitted).

As the lengthy excerpt, above, makes clear, the state court carefully applied the applicable Chapman standard.  The state court did not summarily decide that the instructional error was harmless. Rather, it carefully examined the record.  Thus, given the record and the applicable law (discussed in detail by the state court), it was not "objectively unreasonable" for the state court to conclude that the instructional error was harmless.  Mitchell, 540 U.S. at 18-19.

In her attempt to show that she is entitled to relief, Petitioner primarily maintains that the California Court of Appeal misinterpreted the evidence and wrongly concluded that this instructional error was harmless.  Petitioner may disagree with the state court's analysis of the facts but she has not shown that the state court's factual determinations were unreasonable.  As such, her argument must fail under AEDPA and this claim is denied.

CONCLUSION

17

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DENIED.  Further, a Certificate of Appealability is DENIED.  See Rule 11(a) of the Rules Governing Section 2254 Cases (effective Dec. 1, 2009).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.  Id.

18

1    The Clerk of Court shall terminate all pending motions as
2  moot, enter Judgment in accordance with this Order and close the
3  file.

4    IT IS SO ORDERED.

5

6  Dated: 3/7/2011

    CLAUDIA WILKEN
7    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    19

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

YOLANDA DOBKINS,

     Plaintiff,

  v.

LOREN BUDDRESS et al,

     Defendant.
_____/

Case Number: CV08-05447 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 7, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Yolanda  Dobkins
766 Brussels St.
San Francisco,  CA 94134

Dated: March 7, 2011

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk

20